## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Angelle et al                          **Case No. 6:18-cv-00272**

**Versus**                             **Unassigned District Judge**

**Town of Duson et al**                **Magistrate Judge Carol B. Whitehurst**


## REPORT AND RECOMMENDATION

Before the Court on assignment by the district judge is a Motion To Dismiss For Failure to State a Claim filed by Defendants, Town of Duson ("Duson"); Chief Kip Anthony Judice ("Chief Judice"), Individually; Officer Timothy Clyde Cannon, Individually; Officer Calvin Joseph Francis, Jr., Individually; and Officer Brian Thomas Poirot, Individually [Rec. Doc. 31], Plaintiffs, Lionello Paul Angelle and Carla Anne Siner's, Memorandum in Opposition [Rec. Doc. 35] and Defendants' Reply [Rec. Doc. 38]. For the reasons that follow, the Court recommends that the Motion be Granted in part and Denied in part.

## I.      BACKGROUND

This case arises out of the May 9, 2017 arrests of Plaintiffs and the search of their property by Officers Francis and Chief Judice with the Duson Police Department and the Lafayette Parish Sheriff's Office. Plaintiffs were originally arrested on a charge of armed robbery of a casino in Duson, Louisiana. After viewing

the casino's security camera video of the armed robbery, Officer Cannon prepared affidavits and search warrants for the search of Angelle's automobile and Siner's residence were signed by Commissioner Frederick to allow for a search of items believed to be owned, used and/or obtained in the armed robbery. Instead of finding items related to the armed robbery, the officers located illegal drugs, a handgun, and a counterfeit $100 bill.

Shortly after plaintiffs' arrest, another casino in St. Landry Parish was robbed on May 10, 2017 under very similar circumstances. Leads developed quickly and the robbers for the St. Landry Parish robbery were identified. The armed robbery charges against plaintiffs were dismissed on May 11, 2017. *R. 1-5.* In light of the drugs found during the search of the residence pursuant to the search warrants, however, plaintiffs were again arrested on drug and weapons charges.

In October 2017, Plaintiffs attended a probable cause determination, as well as a hearing on their Motion to Suppress. The probable cause determination was held first, and Louisiana State District Judge Jules Edwards determined that there was probable cause for plaintiffs' arrests. In a hearing on the Motion to Suppress, upon viewing the video used by the defendant officers in applying for the warrants Judge Edwards reached a different conclusion than the officers, ruling that he personally did not perceive similarities in the gait of the female suspect walking on the date of the robbery, and that the male suspect did not have a distinct potbelly as Mr. Angelle.

2

*R. 31-3, October 18, 2017 hearing transcript.* Because Judge Edwards did not view the various characteristics described in the search warrants as described by Officer Cannon, he ruled to suppress the evidence, finding that the search warrants were flawed. Since the drugs, gun and counterfeit $100 bill were the only physical evidence against plaintiffs, the District Attorney's office dismissed the charges.

Plaintiffs filed this lawsuit on March 5, 2018, asserting claims under 42 U.S.C. § 1983 and Louisiana state law against the Defendants for their arrest and subsequent prosecution. *R. 1.* Plaintiffs asserted a claim for Plaintiffs' "racially motivated" arrests under the Fifth and Fourteenth Amendments, *Id.*, a claim for "unreasonable search and seizure" under the Fourth and Fourteenth Amendments and various state law claims. On May 9, 2018, Plaintiffs amended their complaint in response to Defendants' first Motion to Dismiss, *R. 18*, adding a claim for excessive force as to Plaintiff Siner, a malicious prosecution claim in violation of the Fourth and Fourteenth Amendments and a *Monell* claim against Duson and Chief Judice. *R. 26.* The Court will refer to the Amended Complaint as "the complaint".

## II.    CONTENTIONS OF THE PARTIES

Defendants argue in their motion that Plaintiffs' fail to state a § 1983 claim (1) under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978) against Duson and Chief Judice, *R. 26, ¶¶ 64-73,* because Plaintiffs' customs and practices and inadequate training and/or supervision claims are vague and fail

to state any particularized facts, *Id. at ¶¶ 21, 22*; (2) Plaintiffs' Fourteenth Amendment claims should be dismissed, *R. 26, ¶¶ 29, 32, 48, 50, 64(b)(c) and (d)*, as they are related to the arrests and properly brought under the Fourth Amendment; (3) the search warrants were based on probable cause and Defendants are protected by qualified immunity; (4) no such claim for malicious prosecution under § 1983 exists; (5) conspiracy between the Officers as employees of the Duson Police Department cannot exist; (6) against "Defendants" without specifically designating which Defendant committed which constitutional tort; and, (7) there is no right under the Fourteenth Amendment to an "investigation." Finally, Defendants argue that Plaintiffs fail to state a claim under § 1981 as they do not allege that Defendants' action were based on Plaintiffs' race.

Plaintiffs contend (1) they have stated a *Monell* claim because Chief Judice "was the final decision maker with respect to law enforcement in Duson" and "the alleged unconstitutional acts arose in connection with [his] law enforcement authority" and this case constitutes a "rare circumstance" in which a single unconstitutional action is sufficient to impose municipal liability; (2) their Fourteenth Amendment "substantive due process" claims should not be dismissed because they "seek redress for government acts that violate personal immunities that are fundamental;" (3) because the court found that the search warrants were based on affidavits which set forth a false and unsupported statement, they were not based

4

on probable cause and Defendants' are not entitled to qualified immunity; (4) the Fourth Amendment admittedly consumes their malicious prosecution claims under § 1983; (5) the Defendants should be considered conspirators under the "collective knowledge" or "fellow officer" rule; (6) the false information in the affidavits should be imputed to all Officers to satisfy their conspiracy claim; (7) they have a constitutional right to an investigation under the Fourteenth Amendment because the affidavit at issue included false information. As to their § 1981 claim, Plaintiffs assert it is the same as their claims under § 1983.

### III.    LEGAL STANDARD RULE 12(b)(6) MOTION TO DISMISS

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is properly granted when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). However, conclusory allegations and unwarranted deductions of fact are not accepted as true,

*Collins* at 498, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," *Id.* at 555. and "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its

6

face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

## IV.    SUBSTANTIVE LAW FOR SECTION 1983 CLAIMS

"Section 1983 confers no substantive rights, but merely provides a remedy for the violation [by a person acting under color of state law,] of rights secured under the Constitution and laws of the United States." *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir.2008). Therefore, an underlying constitutional or statutory violation is a predicate to any theory of liability under § 1983. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir.1989). The plaintiff must establish in a § 1983 action that there has been: (1) a violation of rights secured by the Constitution or laws of the United States, (2) that was committed by a person acting under color of state law. *Southwestern Bell Telephone* at 260.

## V.    ANALYSIS

## A.    42 U.S.C. § 1983 CLAIMS

### 1. *Monell* **Claims**

Defendants assert that Plaintiff's Third Claim for Relief attempts to assert a *Monell* claim against Duson and Chief Judice, individually, for failure to adequately or properly train or supervise officers with the Duson Police Department. *R. 26, ¶¶*

7

*64-73.* They contend that because Plaintiffs' complaints put forth no statement of particularized facts of any "custom" or "policy" of Chief Judge or Duson nor any allegations as to the type of training and/or supervision that should have been conducted to avoid the alleged violation of Plaintiffs' constitutional rights, Plaintiffs' *Monell* claims should be dismissed.

### a. Policy Liability

Plaintiffs allege that Chief Judge and Duson "created a policy and custom that permits officers to violate citizens' civil rights." *R. 26, ¶ 21.* They further allege that Chief Judge and Duson "created an atmosphere and practice of allowing the officers of the Duson Police Department to have unlimited authority, to make decisions on arresting citizens without conducting proper investigations, and to submit speculative basis for search and arrest warrants…. exposing the citizens of the 15th Judicial District of Louisiana and the Plaintiffs to the dangers of law enforcement officers acting unlawfully in concert without any authority." *Id.* They allege that these Defendants' developed and maintained policies, procedures, customs and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, such as those of Plaintiffs in this case. *Id. at ¶ 70.*

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

In *Monell*, the Supreme Court held that municipalities and other local government bodies are "persons" within the meaning of § 1983. *Monell*, 436 U.S. at 689. Municipalities cannot be held liable under a theory of respondeat superior. *Id.* at 691; *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Instead, the Court must apply the *Monell* test, which ensures that cities are held responsible only for "their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To state a claim under *Monell*, plaintiffs must allege the existence of (1) an official policy or custom, of which (2) a policymaker is charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

In *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999), the Fifth Circuit stated:

The "official policy" requirement may be met in at least three different ways: (1) "[W]hen the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," *see, e.g., Monell*, 436 U.S. at 660–61 (city agencies issued a rule requiring pregnant employees to take unpaid leaves before any medical need arose); (2) Where no "official policy" was announced or promulgated but the action of the policymaker itself violated a constitutional right, *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 485 (1986) (county prosecutor, acting as county's final decision maker, directed county

deputies to forcibly enter plaintiff's place of business to serve capiases upon third persons); and (3) Even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] ... can reasonably be said to have been deliberately indifferent to the need," *Canton,* 489 U.S. at 390.

*Id.* (some citations omitted). The first two requirements involve direct action by a "policymaker," either in the form of generally applicable policies or specific, directed actions. *Id.* The third involves a failure to act by policymakers when "the need to take some action to control [its agents] 'is so obvious, and the inadequacy [of existing practice] so likely to result in a violation of constitutional rights, that the policymaker ... can reasonably be said to be deliberately indifferent to the need.' " *Id.* (quoting *Canton*, 489 U.S. at 390).

Plaintiffs' alleged basis for *Monell* liability is that Chief Judice was the final decision maker with respect to affidavits which ultimately led to arrest and search warrants. They contend that Chief Judice and Duson adopted policies and customs of including false statements in the affidavits, leading to affidavits which were not based on probable cause and illegal arrests and searches. In this case, Chief Judice made the decision to execute the warrants based on false statements in the affidavit by arresting Plaintiffs.

"[A] single decision may create municipal liability if that decision [was] made by a final policymaker responsible for that activity." *Bennett v. Pippin*, 74 F.3d 578,

586 (5th Cir.1996) "State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Id.* The question is whether Chief Judice is the final law enforcement policy-maker for Duson. The United States Supreme Court instructs that "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989); *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752 (5th Cir.1993).

Plaintiffs contend that Duson is a Lawrason Act municipality in which Chief Judice was the appointed police chief of Duson. They maintain that pursuant to LA R.S. 33:423A, "the chief of police .... shall have general responsibility for law enforcement in the municipality and shall be charged with the enforcement of all ordinances within the municipality and all applicable state laws." *Lentini v. City of Kenner*, 211 So.2d 311 (1968). They further contend that because the Lawrason Act expressly excludes police department employees from the Mayor's authority, the Chief of Police is the final law enforcement policy maker for the Town of Duson.

Defendants do not dispute Plaintiffs' contention that Chief Judice was the final policy maker for Duson. Rather, without providing any support or citing any jurisprudence, they contend that this case does not constitute one of the rare situations necessary to assert municipal liability against Duson. *R. 38.* Defendants

11

do not address the specific issues related to Plaintiffs' allegations as to the affidavit or Chief Judice's execution of the affidavit and related search and arrest warrants against Plaintiffs.

Plaintiffs' complaint, which the Court must accept as true at this stage of the proceedings, alleges Chief Judice allowed the officers of the Duson Police Department "to make decisions on arresting citizens without conducting proper investigations, and to submit speculative basis for search and arrest warrants" which Chief Judice ultimately acted on by preparing an affidavit and arresting Plaintiffs. When the person who committed the challenged act is in charge of policymaking in that part of the government, "'policy' can sometimes be found to have been established by the very act itself." *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.2005). Thus, a municipality may be liable for even a single act or decision if it is made by a final policymaker responsible for that activity or decision if that action "was the moving force behind and direct cause of the alleged injury." *Bd. of Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404–05 (1997); *see also Williams v. Kaufman County*, 352 F.3d 994, 1013, 1014 & n. 66 (5th Cir.2003).

Plaintiffs' have plead facts, which if true, raise a plausible right to relief under 42 U.S.C. § 1983 against the town of Duson for the official capacity acts of its Police Chief Kip Judice.

### b. Failure to Train

Plaintiffs' failure-to-train theory requires a plaintiff to prove that "1) the [town] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). A *Monell* allegation must specifically set forth precisely what type of training was deficient in light of a clearly established constitutional right. This "rule that a [defendant] is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. *City of Canton v. Ohio*, 489 U.S. 378, 1205 (1989);  *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992) (a plaintiff must allege with specificity how a particular training program is defective).

Here, Plaintiffs simply make broad, general statements that Duson or Chief Judice failed to train and supervise police officers. Not only are the allegations void of a specific pattern of misconduct, there are no allegations whatsoever that specify how Chief Judice or Duson failed to train and supervise. *See also, Snyder*, 142 F.3d at 798 (That a particular officer may be unsatisfactorily trained will not alone suffice

to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program).

Since Plaintiffs' Complaints lack any specific allegations that Duson or Chief Judice failed to adequately train and supervise (or a pattern thereof), Plaintiffs' *Monell* claim  for failure to train and supervise cannot survive this motion and should therefore be dismissed.

### 2. Fourteenth Amendment Claims

Plaintiffs' Fourteenth Amendment claims are asserted in paragraphs 29, 32, 48, 50, 64(b), (c), and (d) of the complaint. *R. 26*. Generally, Plaintiffs allege under the Fourth and Fourteenth Amendments, the right to be free from excessive force and malicious prosecution without probable cause and due process. *Id.* Defendants assert that the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 394-95 (1989), instructs that because Plaintiffs allege Fourth Amendment claims, their claims must be analyzed under the standard appropriate to that specific constitutional provision and not under the substantive due process clause of the Fourteenth Amendment.

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 270 (1994). Here, Plaintiffs state that the action of Defendants violated their Fourth Amendment rights to be free from unreasonable

seizure through excessive force and to be free from malicious prosecution. They further contend that Defendants' actions infringed their substantive due process rights under the Fourteenth Amendment.

### a. Excessive Force

The Fourteenth Amendment only begins to protect an individual after an arrest, and after the individual is released from the arresting officer's custody and placed into detention awaiting trial. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). The Supreme Court has held that claims involving law enforcement's use of excessive force in the course of an arrest, investigatory stop, or any other "seizure" of a free citizen are to be analyzed under the Fourth Amendment's "objective reasonableness" standard rather than the Fourteenth Amendment's substantive due process standard. *Graham*, 490 U.S. at 395.

### b. Malicious Prosecution

The Fifth Circuit "has held that the federal Constitution does not include a "freestanding" right to be free from malicious prosecution." *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (citing *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003)). In *Castellano*, the Fifth Circuit recognized that § 1983 claims "must rest upon the denial of rights secured under federal and not state law." *Castellano*, 352 F.3d at 942. In *Albright* the Supreme Court held that there was no Fourteenth Amendment "liberty interest" or substantive due process right to be free from

criminal prosecution unsupported by probable cause. *Id*. at 270–71. Rather, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing these claims.'" *Albright* at 273. The *Albright* Court held that the plaintiff's claims based on prosecution without probable cause were best analyzed under the Fourth Amendment, as the "Framers [of the Constitution] considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id*. at 274; *see also Minnieweather v. Carroll*, 1995 WL 314383, at *2 (5th Cir. 1995).

Here, all of Plaintiffs' claims against Defendants relate to the search and arrests allegedly based on charges without probable cause. In light of the foregoing jurisprudence, these allegations are properly analyzed under the Fourth Amendment rather than under the heading of the Fourteenth Amendment's substantive due process. As Plaintiffs' claims for violations of search and seizure and malicious prosecution are subsumed in their Fourth Amendment claims, the related Fourteenth Amendment claims and the "freestanding" malicious prosecution claim should be dismissed.

### c. Right to an "investigation"

Plaintiffs allege that their civil rights were violated by the Defendants for deficient and/or improper investigation into the armed robbery, which resulted in

16

their arrests and issuance of search warrants. R. 26, ¶ 21. Defendants argue that a claim for "failure to investigate" and/or "deficient investigation" is not a cognizable constitutional violation as required by § 1983.

As stated by the court in Burrell v. Adkins, 2007 WL 4699166, at *9 (W.D.La., 2007), "[t]here is no constitutional right to an investigation. Therefore, there is no constitutional basis for a Section 1983 action based on an unreasonable investigation." Id., see also Shields v. Twiss, 389 F.3d 142, 146 (5th Cir. 2004). "The due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). Thus, Plaintiffs must point to harm caused by the deficient investigation—a false arrest or imprisonment. Plaintiffs' investigation claim is subsumed within their Fourth Amendment claim. Burrell, 2007 WL 4699166, at *9.

### 3. Whether the Search Warrants Lack Probable Cause

Plaintiffs allege that the affidavits prepared by the Duson Police Officers at issue "contained false and speculative information" as to the identification of Plaintiffs, and "were totally lacking in probable cause for arrest or to believe evidence of the Casino robbery could be found in the Plaintiffs' vehicle or residence." *R. 26, ¶¶ 7- 9.* In particular, they allege that the search warrant affidavits falsely assert that "security camera video recordings ... show a similarity in gait

between Plaintiff Siner and the female robber." *Id. at ¶ 9.* They allege that no one actually identified the Plaintiffs as being the robbers, since the robbers wore masks. *Id.* Rather, besides the similarity in gait, the only similarity to the robbers was that Plaintiff Siner was slender and African American, as was the female robber. *Id.* They allege that after the search and arrest warrants were issued, "the Duson Police Department re-examined and found the casino security camera video recordings images of another slender black female, which law enforcement now believe to be the female robber of both casinos." *Id. at ¶ 13.* Plaintiffs further allege that a bill of information was filed charging both of them with offenses arising from the search of the residence. After a hearing was conducted on Plaintiffs' motion to suppress in which Judge Jules Edwards granted the motion, the District Attorney dismissed all charges against Plaintiffs. *Id. at ¶ 16.*

In their motion, Defendants move the Court to dismiss Plaintiffs' claims that the search warrants were not based on probable cause, despite Judge Edwards' subsequent ruling on the motion to suppress. In support, they cite the applications for the search warrants attached to Plaintiffs' complaint which demonstrate additional information regarding the specifics of Plaintiffs' identities—including similarity in the suspects' clothing with that of the Plaintiffs' and a female casino cashier's statement of the similarity in Siner's voice to that of the female robbery suspect. *R. 26-3, 26-4,* Exhs. 3, 4. Since the affidavits are made part of Plaintiffs'

complaint, Defendants contend that the Court should undertake the legal analysis to determine the sufficiency of the search warrant affidavit.

The Court declines Defendants' invitation as contrary to its role in reviewing a motion under Rule 12(b)(6). Rather, based on Plaintiffs' allegations and the affidavits attached to the complaint, the Court finds that Plaintiffs have alleged a plausible claim that the search warrants in this action lacked probable cause.

### 4. Plaintiffs' Conspiracy Claim

Plaintiffs allege that the "individual defendants conspired and/or acted in concert to institute, procure and continue a criminal proceeding in Lafayette Parish for various felony charges arising out of the execution of search warrants lacking probable cause and based upon false information." *R.26, ¶ 51*.

Under 42 U.S.C. § 1983,[1] "[t]he elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1990). Mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under

---

[1] In opposition to Plaintiffs' conspiracy claim, Defendants assert jurisprudence applicable to §1985(3) which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3). In order to prove such a claim under § 1985(3), Plaintiffs must show that the conspiracy was motivated by a class-based animus. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir.1994). Plaintiffs make no mention of § 1985 nor any allegations of race-based discrimination in this case. Defendants themselves state that "[a]lthough Plaintiffs claim that they are of African-American ancestry, they do not allege that they were discriminated against due to their race." *R. 31, p. 17*.

42 U.S.C. § 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (en banc). Specific facts must be pleaded when a conspiracy is alleged; mere conclusory allegations will not suffice. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). Plaintiff must allege the operative facts of the alleged conspiracy. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). The Fifth Circuit has noted that "charges as to conspiracies must be based on substantial and affirmative allegations, and no mere gossamer web of conclusion or interference, as here, trifles light as air," will suffice to sustain a claim of conspiracy. *Crummer Co. v. Du Pont*, 223 F.2d 238, 245 (5th Cir. 1955).

Here, Plaintiffs contend that the Court must find that the "knowledge possessed by one law enforcement officer" should be imputed to all of the officers in this case. While they cite jurisprudence in support of their contention, none of the cases cited apply to a § 1983 conspiracy claim, and are therefore distinguishable as to the issue in this case. Rather, Plaintiffs fail to allege with specificity the name of any of the alleged co-conspirators, merely referring to them as "Individual Defendants" or "Defendants." *R. 26, ¶¶ 50-52.* They provide nothing to substantiate their claim of conspiracy other than their bare and conclusory assertion that one existed. *Id.* Such pleadings fail to comply with the requirement that a conspiracy claim must be plead with "specific facts," including the "operative facts of the alleged conspiracy." Accordingly, they wholly fail to state a conspiracy claim. *See*

20

*Babb v. Dorman*, 33 F.3d 472, 476 (5th Cir.1994) (bald allegations of conspiracy are insufficient to state a § 1983 claim).

Additionally, as argued by Defendants, all of the named Defendants are from a single entity—the Duson Police Department. As such, a conspiracy claim against them is barred by the intra-corporate conspiracy doctrine. *Reynosa v. Wood*, 134 F.3d 369, *2 (5th Cir. 1997) ("where all of the defendants are members of the same collective entity, the conspiracy does not involve two or more people"); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). In this case, all Defendants named in the conspiracy are employees of the Duson Police Department. Thus, they constitute a single entity, which is incapable of conspiring with itself. *See Thompson v. City of Galveston*, 979 F.Supp. 504, 511 (S.D.Tex.1997) (applying doctrine to § 1983 conspiracy claim involving police department and police officers). Even when the defendants are sued in their individual capacities, as the Defendants in this case, the premise is still true. *Collins v. Bauer*, 2012 WL 443010, *8 (N.D. Tex. 2012).[2] Plaintiff's conspiracy claims should be dismissed.

### 5.  Whether Plaintiffs' § 1983 Claims Against Defendants Are Sufficient

Defendants complain that Plaintiffs fail to individualize their complaint against each defendant, instead making "en globo" allegations against "Defendants."

---

[2] The Court notes that none of the exceptions to the intracorporate conspiracy doctrine exists in this action as there are no allegations that Defendants (1) had an independent stake in achieving the object of the conspiracy; (2) acted for their own personal purposes; or (3) acted outside the scope of their employment. *Id. at *7, *8.*

Defendants contend that such pleading "deprives defense of trying to discern which defendant did what, and who may/may not be entitled to qualified immunity at this motion to dismiss stage."  *R. 31*. Specifically, Defendants contend that Plaintiff, Siner amended the original complaint to add an alleged excessive force claim. *R. 26, ¶ 6*. Defendants state that Siner's amended allegations fail to provide any specificity as to the "excessive force" events that took place which caused her alleged injury.

In their complaint, Plaintiffs name as defendants Kip Anthony Judice; Timothy Clyde Cannon; Calvin Joseph Francis, Jr.; Brian Thomas Poirot; and Thomas Blake Soileau. The only allegations regarding **specific** actions/violations as to each of these Defendants are:

1. Chief Judice – handcuffed Plaintiffs, supervised the investigation prior to arrest, *Id. at ¶ 6*; executed search warrants, *Id. at ¶ 8;*

2. Defendant Cannon – handcuffed Plaintiffs, conducted the investigation prior to arrest, *Id. at ¶ 6*;

3. Officer Francis – transported Plaintiffs to Acadia Parish Prison; executed search warrants, *Id. at ¶ 8;*

4. Officer Poirot – arrested/took Plaintiffs into custody after the search and transported Plaintiffs to the Lafayette Parish Sheriff's Office pursuant to arrest warrants *Id. at ¶ 12;*

5. Sheriff's Deputy Soileau - executed search warrants, *Id. at ¶ 8;* was shown the affidavit and search warrant, *Id. at ¶ 9*.

In *Cain v. City of New Orleans*, 2016 WL 2849478 (E.D.La., 2016) (J. Vance), the court found that "with few exceptions, plaintiffs' [] complaint directs its

22

allegations not towards the City, or any other individual or entity, but towards defendants as a group…. This pleading structure—lumping all defendants together and asserting identical allegations as to each, without distinction—largely prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions." *Id at *5.* After considering Plaintiffs' "allegations of collective wrongdoing by all [] defendants," the court found that Plaintiffs' section 1983 and state-law allegations were not sufficient to state plausible claims and the complaint was dismissed under Rule 12(b)(6). *Id., see also Bank of Am., N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013) (affirming dismissal of complaint alleging collective responsibility as to all defendants); *Zola H. v. Snyder,* 2013 WL 4718343, at *7 (E.D. Mich. Sept. 3, 2013) (dismissing complaint that lumped defendants together and failed "to impute concrete acts to specific litigants").

The Court agrees that Plaintiffs' complaint fails to provide fair notice under Rule 8(a)(2), as the allegations in the complaint related to the constitutional violations under § 1983 as well as state law fail to make clear exactly who is alleged to have done what to whom, necessary to provide each individual with fair notice as to the basis of the claims against him. *See Twombly*, 550 U.S. at 565, f.n. 10. Thus, Plaintiffs should amend their First Amended Complaint to allege more definite statements to provide Defendants with adequate notice of the claims against them, as well as factual pleading distinguishing plausible claims against each Defendant

individually. *See, Petri v. Kestrel Oil & Gas Properties, L.P.,* 2011 WL 2181316, at *7 (S.D. Tex. June 3, 2011). Plaintiffs are admonished that each allegation must be simple, concise and direct as required by FRCP 8(d)(1). Unnecessary prolixity in the pleadings places an unjustified burden on the Court and the party who must respond by being forced to select the relevant material from a mass of verbiage.

## B.    42 USC § 1981 CLAIM

Plaintiffs' allege a violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1981. Section 1981 prohibits race discrimination in the making and enforcement of contracts. To succeed on a claim under § 1981, Plaintiffs must show that (1) they are a member of a racial minority, (2) the defendant had an intent to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288-89 (5th Cir. 2004). Furthermore, a plaintiff cannot state § 1981 claim unless he has, or would have, rights under an existing, or proposed, contract that he wishes "to make and enforce"; § 1981 plaintiffs must identify injuries flowing from a racially motivated breach of a contractual relationship. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006).

...

Although Plaintiffs' claim that they are of African-American ancestry, they make no allegations that they were discriminated against due to their race.[3] Nor do Plaintiffs allege any facts that would support a claim that Defendants, through act or omission, prevented them from making, performing, modifying, or terminating a contract. As Plaintiffs do not allege any facts to form a cause of action under § 1981, this claim should be dismissed.

## CONCLUSION

For the reasons stated in the foregoing,

**IT IS RECOMMENDED** that the Motion To Dismiss For Failure to State a Claim filed by Defendants, Town of Duson; Chief Kip Anthony Judice, Individually; Officer Timothy Clyde Cannon, Individually; Officer Calvin Joseph Francis, Jr., Individually; and Officer Brian Thomas Poirot, Individually [Rec. Doc. 31] be **GRANTED IN PART AND DENIED IN PART,** in that: (1) Plaintiffs' *Monell* claim for failure to train be dismissed; (2) Plaintiffs' Fourteenth Amendment claims for excessive force and malicious prosecution be dismissed; (3) Plaintiffs' claim under the Fourteenth Amendment for a right to investigation be dismissed; and, (4) Plaintiffs' § 1983 "freestanding" malicious prosecution claim be dismissed; (5) Plaintiffs be required to file a motion for leave to amend their First Amended

---

[3] The Court notes that Plaintiffs' **removed** the allegation from the original complaint that the arrests of "Plaintiffs Angelle and Siner were racially motivated." *R. 1, ¶ 25.*

Complaint, *R 26*, as to the constitutional violations under § 1983 as well as state law claims in accordance with this R&R, on or before <u>TWO WEEKS</u> from the date of the entry of the District Judge's Order; (6) Plaintiffs' claim under the Fourteenth Amendment for a right to investigation be dismissed; and, (7) Plaintiffs' claim under 42 U.S.C. § 1981 be dismissed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b)(2), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or on a date set by the district court, shall act to waive the party's right to review by the district court. Fed. R. Cr. P. 59(b)(2).

**THUS DONE AND SIGNED** this 6th day of August, 2018 in Lafayette, Louisiana.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**